number one nine one six two zero Christian Diaz Ortiz versus William Barr Good morning, your honors. May it please the court. My name is Kristen Buol. I'm here today as pro bono counsel for petitioner Christian Josue Diaz Ortiz. Chief Judge Howard, I would like to reserve three minutes for rebuttal. Yes. Thank you. Christian respectfully asked this court to reverse the BIA's decision denying Christians valid claims for asylum withholding of removal and relief under the Convention Against Torture and to remand this case back to the BIA for consideration under the correct legal standards and with instructions to properly consider the substantial evidence submitted by Christian. Your honors, I'm going to address the claim on relief under the Convention Against Torture or CAT first because it is clear that the BIA used the wrong legal standard. First, by impermissibly inserting a nexus requirement into Christian's CAT claims and two, for using the wrong standard for the required level of torture. In the BIA's decision on page five of the administrative record, the BIA states that the documentary evidence provided by Christian did not independently establish that it was more likely than not that he would be tortured by the gangs if he returned to El Salvador, quote, based on his Christian faith. This improperly inserts a religious nexus into the CAT claim. Also on page five, the BIA states that the single beating suffered by Christian did not require medical attention. Requiring medical attention is not a requirement to show torture under CAT. No, one can agree on that, but it's still the evidence showed that he did not require medical treatment and there's nothing wrong with the BIA commenting on what the evidence is. Why do you suppose they changed a legal standard? They don't say that. Your Honor, so that was one of the only comments that the BIA had mentioned, that this was a single harm suffered that did not require medical attention. I'm just trying to get your argument. We're on the Convention Against Torture. You've argued they've used the wrong standard. You gave two examples. Do you have another argument about them using the wrong standard or that the evidence compelled a different outcome? Yes, Your Honor. In addition to improperly using or importing a religious nexus into the claims, the BIA also ignored salient evidence that was submitted by a Christian that supported his CAT claims. Counsel, I'm a little surprised by your choice of focus because the adverse credibility determination of the IJ and then the BIA, that affects all of your requests for relief. There was so much attention played in the briefing and below to the credibility issue, and in particular, the reliance by the IJ and the BIA on the packet of information on gang membership. I'd appreciate it if you would focus a bit on that issue. Of course. So as you have noted, we have argued that the adverse credibility determination was erroneous, and that was because it was based on a single perceived inconsistency in Christian testimony that was not actually inconsistent or non-existent. Counsel, that's not the issue. It's an important issue, but your time is limited. You make the argument that the IJ and the BIA should not have relied as heavily as it did on all these gang reports because they were not reliable. It was fundamentally unfair to do so. In what way were they unreliable? In what way was it fundamentally unfair for the authorities to rely on it? I gather at the hearing, in an effort to try to challenge some of the information, you asked that the agent who was responsible for sending that information be available for cross-examination. I gather the agent was not there. Is that correct? Correct. How was that evidence presented to the IJ? During the asylum hearing, the DHS attorney had the packet with him at the hearing. He entered it into evidence. The first page of that report is a summary by Officer Sean Connelly after he reviewed the field interview reports. Then counsel for Christian actually objected to using or allowing that packet to be submitted as evidence. The packet that was submitted, had that packet been given to you in advance of the hearing? No, Your Honor. It had not been given to us. Also, the packet has changed over time as well. There have been several different versions of this packet that have been in existence throughout the proceedings of Christian's trial. Okay, so you were given the packet. Were you counsel at the hearing? I was. Okay. And did you ask for time to review it? We did not, Your Honor. We actually, so my co-counsel, Ms. Gordino, who is here, she did ask the judge if she could approach Christian while he was on the stand with the packet and that we go through the packet page by page so Christian could see the evidence presented against him. In addition to objecting to it. And that is what happened? The judge actually overruled the objection and said that Christian didn't need to see the packet. Okay. Thank you. Good morning, Your Honors. My name is Beau Santin. I'm here today on behalf of the United States Attorney General. As Your Honor has already recognized, there is a single issue that drives this case because it bears on asylum, withholding of removal, and protection under the Convention Against Torture. And that is whether or not Petitioner presented a credible claim for each form of relief. And the facts of this case are relatively straightforward. Petitioner claims that he is an evangelical Christian who was targeted by MS-13 gang members back in his home country. They approached him three times. Then ultimately, the final time, he was attacked and this led him to flee his country. But the reason why he was attacked, he claims, is that he was an active youth leader in his church. He would walk the streets, preaching the gospel, trying to recruit individuals. We know all this. We've read the briefs. Judge Lopez has expressed concern about the use of the MS-13 database, which is kept by DHS, and how it was used, and I assume other issues that have been raised in the brief. Perhaps you could go directly to that. Yes, Your Honor. I was actually going that direction because... Then go there. I'm definitely headed that direction because you have the claim by Petitioner, which stands in stark contrast to the law enforcement documents that were introduced at his merit hearing, which consistently show that over two years, he associated with known MS-13 gang members in areas notorious for MS-13 gang activity, and he was also caught with MS-13 gang-related items. The law enforcement documents bear this out, and it's worth immigration appeals. One looks at that report, and in big, bold letters, many of the individuals that he associates with, yes, MS-13 gang member, the expert who submitted a declaration raising many concerns about the reliability of this information, questions, well, how do we know how those individuals were identified as MS-13 gang members? There's nothing in the documentation which tells us, which answers that question, and so the implications of his association with those individuals is huge. He gets points for his association with those individuals. We have no idea from this report how it is that they were identified as MS-13 members. Isn't that true? It does not appear that there's evidence to the record that illuminates on how they were identified as MS-13 gang members. The individual who was there, who might have been able to illuminate that, he wasn't made available to answer any questions about that. Isn't that true? Yes, Your Honor. But just to go back for a moment, there was no argument made below before the board or the immigration judge regarding that these documents should not be introduced because of Sean Connolly not being there to be cross-examined. So this is an entirely new argument that the government's only hearing for the first time now, and so obviously this is an unexhausted argument that is not properly before the court. But the Board of Immigration Appeals did address the very statement from the expert that you're referencing now, and they point out that the expert does not explain why it is not a reasonable suspicion when an individual who does hang out with other MS-13 gang members gets called MS-13 gang-related weapons. And this isn't just one sporadic instance. No, these reports were created over two years, and they total a number of 11. There's 11 different reports over two years that consistently show him hanging out with MS-13 gang members, and this is on top of the fact that you have a petitioner who testified in no uncertain terms that a good Christian would never hang out with gang members. What is the criminal activity that the petitioner is implicated in in those reports? What criminal activity is he implicated in? Well, if you go look at the reports, there are four instances in which he was caught with marijuana, smoking marijuana. Well, apparently they attach absolutely no significance to that. They didn't. He wasn't charged. He wasn't arrested. Absolutely right. He was not charged. He was not arrested. That doesn't have any bearing on the reliability of those reports. The fact is you have police on the ground, walking the beat, observing MS-13 areas, seeing individuals come in and out of these areas and smoking marijuana, right? And just to look at this more broadly, here you have the petitioner... That's pretty commonplace. That activity is rather commonplace among teenagers, people his age, isn't it? Is that indicative of gang activity? Smoking marijuana? Well, it just wasn't that, though. The Board of Immigration Appeals said the same thing. It was hanging out in areas notorious for MS-13 gang activity, being discovered with MS-13 gang-related weapons. On top of that, the individuals that he hung out with, you can go look at the reports. One of them had a steel aluminum baseball bat hidden down his sweatpants and also discovered with an X-Acto knife. One of those individuals he was associating with was riding a bicycle, right? Apparently, some of his contemporaries use a bicycle. He said he used a bicycle. Is that correct? But he didn't mention a bicycle until cross-examination. If you go to the record of the immigration judge, to simply question him about what sort of transportation did he use around Boston, East Boston, he never once mentioned using a bicycle. He was in absolute terms when he said, I only use the train, right? And it was only across examination that he was confronted with this fact, then the bike locked, and asked to explain this inconsistency that he said, oh, I have a bicycle. I thought in one of the instances, he's hanging out with about five MS-13 members, one of whom there is a warrant out for his arrest, and that's why the police go, they find him, and they are effectuating the arrest warrant. Is that correct? Yeah, mostly correct, Your Honor. The police officer was observing that group of individuals, and they believe that one of them did have an open arrest warrant, so they approached that group, discovered that that individual was not part of the group. But you're right, that is demonstrating that these individuals, that the petitioner would have been aware that something wasn't up and up if he was a good Christian person who never associated with gang members. My point was a different one, which was there was some evidence that he was an MS-13 member if there was an arrest warrant out for him, which identified him as that and as having committed some crime. It wasn't an arrest warrant, it wasn't related to the petitioner, but someone in that group. And I agree wholeheartedly, Your Honor, and building on the point that you're trying to make, there's another instance in the law enforcement documents where petitioners observed hanging out with other groups of individuals, one individual walks up to the group, there's a discussion, and the police officer observing the group can hear that the person identifies the other person as an MS-13 gang member, and the petitioner was there for that instance. And so this is more evidence for reasonable suspicion that this person is an MS-13 gang member. Where does that appear in the record, counsel? You say that there's a group and an officer overhears somebody say in the presence of the petitioner that so-and-so is an MS-13 gang member? Yes, if you go to the record, page 250 is where it is. Page 250? 250, yes, Your Honor, is where that reference is made, him identifying, one person identifying another as an MS-13 gang member. And it just simply was him, he simply just wasn't hanging out with these individuals and smoking weed. He was also caught loitering, he was caught trespassing, he was caught skipping school. And again, you have to put this in the context of his testimony, where he claims that as a good Christian person, he was never a member of a gang. He would never associate with gang members. So that's the thing, you have two contrasting stories here. You have one where the petitioner is innocent, he's someone who preaches God, loves God, prays every single day, would never associate with anything that was bad. But then you have law enforcement documents that demonstrate over a two-year period that he consistently hangs out with MS-13 gang members, their associates in areas known for this activity. The evidence of gang membership, what role did that play in the adverse credibility determination of the IJ? Well, the immigration judge relied on law enforcement documents that demonstrated that he was an MS-13 gang member, which fundamentally contradicted his claim that he was a Christian who would never be an MS-13 gang member. So it was critical to the adverse credibility determination, you would acknowledge? It's important. But there was another reason that the immigration judge gave for finding him unbelievable. And under the REAL ID Act, you only need a single inconsistency upon which to base the adverse credibility. And here you have a petitioner who initially testified that the only form of transportation that he ever used was a train. And he did this in absolute terms, Boston, East Boston, it doesn't matter, he never mentioned using a bicycle. And it was only when he was confronted across examination that they critiqued him. That was so potent because of the view that a bike and chain lock is often carried by MS-13 gang members, is that correct? That's why that mattered so much? Yes, Your Honor. And there's evidence of record, there's a slide from the Boston law enforcement that explains that bike locks, bike chains are used as gang-related weapons. And I realize I'm out of time, so if there are no further questions, I'll sit down. But otherwise, I respectfully ask this court to deny the petition for review. Thank you. Thank you. Thank you, Your Honors. As Judge Lopez has rightly noted, the BIA's reliance and the IJ's reliance on this DHS packet was critical to the adverse credibility determination. I'd like to rebut several points that... He offers an explanation which is contradicted by his earlier statements. And if the REAL ID Act only requires one instance, then the other MS-13-related evidence, whether reliable or not, is not crucial to the outcome. I would like to address this issue of weapons. Answer the question. Go ahead. So, Your Honor, although the BIA has stated that Christian was found carrying gang-related weapons, first of all, that is not true. He was one time found with a bike lock. And chain. A bike lock and chain, Your Honor. He has never faltered from his statements that he owns a bicycle. In fact, in the DHS report, the specific field report that mentions the bike lock, the police officer does not state that this is a gang-related weapon. It simply states that Christian was found with the chain and bike lock, that he told the police officers it was for his bicycle. The officer then said they confiscated the bike lock and then they logged it into District A-7. They've never produced the bike lock, despite several FOIA requests from us. Also, the only evidence... He did, Your Honor. But he also said it was for his bike. No, but he acknowledged having it. Yes, yes. He did have it. And how come the immigration judge could not conclude that there was a credibility problem with his having previously testified that he traveled only by train, never mentioned a bike? Your Honor, that part of the testimony is not inconsistent. What happened during the testimony is that the judge did ask Christian what his mode of transportation was. Now, keep in mind that this testimony was received through a translator. Christian responds that he did not understand the question. The IJ asks the question again, and Christian responds with, the train. May I finish? Yes. He then later tries to clarify this answer. The judge says, did you or did you not tell this court you only took the train? He responds with, yes. Well, when I lived in East Boston, which is where he was... That is where he was found when he was found with the bike lock in his possession. He says, when I lived in East Boston, I, of course, I had my bike. But when traveling to Boston, I took the train. So Christian is attempting to clarify his answer about the train. And in addition, the IJ did not allow Christian to explain... That was after he was confronted with the bike lock, wasn't it? Yes. Correct. Okay. I'm done. Thank you. Thank you.